Good morning, Your Honor. Keeping Judge Posner's remarks in mind this morning, I'd like to cut right to the chase involving the preliminary injunction contempt issue. If you guys have any questions on the jurisdiction issue, I'd be more than happy to answer them. In this case, it was a 2017-2015 order entered by Judge Guzman in which he found Mr. Shekar in contempt and denied his motion to vacate a preliminary injunction. Our primary basis is kind of a technical one involving the testimony of Daniel Rothman, who was the expert that was presented by the plaintiff's teledyne. Mr. Rothman, who was presented without Rule 26 or expert, any type of expert reports, made testimony to a certain fact and established certain facts. The bulk of his testimony regarding what drives were connected, what information was sought, all came from a forensic image from a work laptop that was given to Mr. Shekar. Mr. Shekar tendered that laptop after he made a complaint to the federal authorities about potentially questionable actions on behalf of the plaintiff to a federal agency. They gave him a receipt for it, and it was not in his possession when it was ordered to be turned over. Therefore, Mr. Rothman was forced to work with a forensic image. It's understandable that Mr. Rothman and the plaintiffs had to work with this forensic image because the laptop. That being said, what was lacking was the necessary foundation and authentication that what Mr. Rothman and his team were working with adequately provided a sufficient basis for which to hold Mr. Shekar liable. Well, as I understand this image, and maybe I'm not understanding it, the image is the exact duplication of the hard drive, so an exact copy. That's what it's supposed to be. And that's what the expert said. And did you have any testimony saying that it was not? Well, I think that there's testimony from Mr. Rothman that indicates it wasn't he. There could be no, no one could pin it down as to who made this image, when the image was made, what potentially was done to this computer prior to the image being made. And I know authentication and foundation are some kind of technical last resorts, kind of weasely. But look at the weight of the evidence. Right. They're kind of almost weasely aspects. But in this case, they're important because they provide the basis for everything that came from that. And this is a case where the plaintiffs bore that burden in establishing the validity of that evidence, bore that burden because everything came from that. You look at the drives that were connected that Mr. Shekar allegedly had in his possession. Each one of those drives was allegedly determined by looking at that forensic image. Each one of those thumb drives that Mr. Shekar allegedly connected at some point during the two-year period was connected, was determined from this forensic image. And this was a case, and again, I know the abuse of discretion standard is not with us. Okay. But that being said, when this kind of, I don't want to say a surprise expert, but certainly one that wasn't tender through the normal course of actions. When Mr. Shekar's counsel at the time raised that issue and said, hey, let us bring in an expert, court said, hey, fine. You got an expert. You come on in with it. And that was done. There's an affidavit filed by a Ms. Chung indicating the potential problems with such a forensic image. And the district court simply ignored it. And I think that that kind of goes to the abuse of discretion standard. Beyond that, looking at these eight thumb drives over a course of a two-year period, I mean, I don't know how computer savvy the world is becoming, but you know, 10, 15, 100 drives could be connected to any one particular computer. And this was information that wasn't in Mr. Shekar's possession, but solely within that Teledyne's. And Teledyne never produced the unique serial numbers of these, never gave any other further information that they gave like they gave with the hard drives. Mr. Shekar was put in a, kind of between a rock and a hard place. And that rock and the hard place, he was asked to produce certain things that he didn't have and couldn't produce. And the But one thing he did know was his iPhone passcode, right? You know, that's a fascinating issue. I know it's been in the news. And he didn't turn that over. Right. And that's been in the news. And I want to talk a little bit about the iPhone pass issue. Mr. Shekar consistently said from point one to today that passcode was 2325. He, prior to turning over that phone, he disabled the passcode so it could be opened with a presence of his attorney at that time, James Borsha. Borsha saw it, showed it, then it was turned over. It was then turned over to Rothman and his team. Now this is a point, I think a couple months, two, three months after Mr. Shekar was terminated. And it was a Teledyne phone. It was then placed in a Faraday bag so it couldn't be messed with. And then it was examined. The problem at this point in time is if you accept just like he knew the passcode, therefore he must have provided a false passcode, doesn't take into account a number of other possibilities, all of which were in the control of Teledyne. One, Teledyne could have remotely shut the phone off, disconnected it, wiped it during that two-month period. Also, during that same period of time, Mr. Rothman or one of his team, and again we get into the evidentiary nuances, this is not something Mr. Rothman did but was done at the direction of someone underneath him, could have mis-entered the phone, the passcode at any time at which time the phone would have locked out. So there were a number of explanations as to what could have occurred other than just simply, hey, Mr. Shekar is providing the wrong password. And in each case, when it came down to it, Mr. Shekar, any undisputed facts, even those undisputed facts that Mr. Shekar put forward were completely rejected by the court. Even to the point where in that June 17th order in that footnote, he's talking about his own experiences with the iPhone and how certain things can be done. Your Honor, in light of those... Is there still litigation going on in the underlying case? I wouldn't say there's litigation. It's currently pending. There has not been a final judgment entered as to specifically the contempt. There's a claim for attorney's fees against Mr. Shekar. Judge Guzman has not entered that as of yet. No, I think this contempt zone grows out of a case, doesn't it? It does, solely out of a case. Pardon? Solely out of a case. So what's the status of that case? Well, the case was the injunction. It was all sought for injunctive relief. Asking Mr. Shekar to turn over a number of different items. It's our position that Mr. Shekar has complied with everything he can comply with. The defendants, we're going to get up here and tell you that we... So there's an underlying suit out of which this contempt order and appeal arises, right? Yes. So what's the status of that underlying suit? The underlying suit is still before Judge Guzman. It's been kind of in a waiting pattern while it's up here. Shouldn't the appeal and the contempt side proceeding, shouldn't that await the final decision of the litigation? Ordinarily it does, Your Honor. We looked at this in the jury... Okay, so why shouldn't it in this case? Well, the central states case talked about if the underlying order is appealable, then you can look at the contempt order. I think that even the way Judge Guzman looked at it, it's kind of a mishmash where the contempt runs into the preliminary injunction, the preliminary injunction runs into the contempt. There was never any effort to separate the two. And it's impossible to appeal one without the other. And that's why I believe that this I see I'm getting into my rebuttal. I didn't understand. What's the challenge to the preliminary injunction? That the preliminary injunction should not have been entered based upon their expert's testimony, Roffman, because there wasn't a sufficient evidentiary basis to prove that Mr. Shakar wrongfully acquired information or had... Well, no matter how it comes out, this doesn't wind up making this moot. Correct. Okay. And I think that the... Well, Judge, I see my time is ending. I'll think about it and I'll come back and rebuttal if that's acceptable. Okay. Thank you. Thank you, Your Honor. Thank you, Mr. Robertson. Mrs. Grumit-Mars? Yes, Your Honor. May it please the court, I have remarks prepared, but I think I can take time more succinctly responding to what counsel just said. Starting with the issue of foundation or authentication of the image, Your Honor was absolutely correct that there was testimony from Mr. Roffman that a forensic image is an exact duplicate of the laptop, in this case, the Teledyne-issued laptop. But there was more testimony from Mr. Roffman. First of all, there was unrebutted evidence in the form of Mr. Roffman's testimony that the image he was looking at was of Mr. Shakar's Teledyne laptop. And he testified, first of all, that he had verified that the emails in that computer had come from Mr. Shakar's Teledyne email address, that there were files on that laptop that had variations of Mr. Shakar's name, and that the computer whose image he was looking at, the exact duplicate, that that had been connected to the Teledyne system. In addition, Mr. Roffman testified that this computer had not been altered since it left Mr. Shakar's possession. And he knew that by saying that the last time a file was altered was February 17th, and that was a date before Mr. Shakar turned over the computer to the government, and it was during a time that Mr. Shakar admits that the computer was in his sole possession. In addition, Mr. Roffman testified that the image, he verified it was an exact duplicate by running what's called a mathematical hash algorithm. He testified that he ran that mathematical hash algorithm, and that it verified that what he had in his possession, what he was looking at, this image, was an exact duplicate of what the FBI had in its possession. In addition, the counsel suggested that somehow everything in this case came down to what Mr. Roffman had testified, and of course he's arguing an appeal. Do you regard the appeal from the contempt order as premature or just erroneous, or what? I do believe it's premature, Your Honor, because this was issued in June of 2015. This whole year we've been litigating other issues relating to Mr. Shakar's compliance. For example, one of the issues at the hearing was particular hard drives that Mr. Shakar had in his possession and it connected to his Teledyne laptop. He, for months, contended that that testimony from Mr. Roffman was a lie. We had to litigate that, and of course, in the end, Mr. Shakar admitted that, in fact, he had one of those Western Digital hard drives and had connected it to the Teledyne laptop, essentially verifying what Mr. Roffman had testified about from the beginning. What's the connection between the contempt and the preliminary injunction? That's a great question. The preliminary injunction was issued on March 10th of 2015. It ordered Mr. Shakar to do a number of things, one of which was to turn over Teledyne information, Teledyne property, as well as any electronic devices in his possession, whether or not that was connected to Teledyne at all so that those could be inspected. He did not do that. A rule to show cause was issued, and we had a hearing, a two-day evidentiary hearing in April and May of 2015. As a result of that hearing, the court properly found that Mr. Shakar was in contempt of court for having failed to abide by numerous, almost all of the requirements in the preliminary injunction. What's the status of the case now? Currently, the underlying case is still pending, and as you did point out, it is a, at heart, it is a theft of trade secrets, confidential information, failure to return confidential information case. That case has been, it's still pending, but it's greatly stymied by the fact that Mr. Shakar has not returned. Will the ultimate resolution of the case that's pending affect this particular proceeding? Well, this proceeding has a great impact on the case. I'm sorry. What I want to know is does the disposition of the pending case affect this case? If they rule one way or another, does that move this? I don't believe so, Your Honor. So this case is independent of anything that the case pending would have? I would say that's correct, and I would say that's correct for one reason, is that Teledyne had to spend a great deal of money to get to the point that we're at now, which is we have gotten some of the items back. What I'm asking is, is there a way we can duck this issue? But, I mean, your answer is no, so go ahead. I'm sorry. Is there a way we can what? Duck the issue. Duck the issue. That is, we say. I don't. I'm sorry. Let it finish up downstairs because that will resolve this issue, but it won't. If Mr. Shakar were to turn around and produce. No, no, no, no, no. I asked whether your opinion was that the resolution of the issue still pending below will affect this, and your answer was no. Correct. Well, I'm not sure how to answer that other than if we were to win below, then I don't know that Teledyne would push forward on the contempt piece, except as to the payment of its fees, which, of course, have continued to mount since we've had to pursue this. Just a couple of other issues regarding Mr. Shakar's own conduct since being found in contempt of court actually bears out everything that Mr. Rothman testified to, and so the idea that somehow what Mr. Rothman testified to wasn't correct, and, of course, at this point we're looking at clear error of the court's factual findings as to how Mr. Shakar did not comply with the court's orders, we would say that since being found in contempt of court, almost everything that he has done has actually borne out Mr. Rothman's testimony. The counsel referenced the number of USB drives, and no one can tell which or how many USB drives were connected at any one point. I think the important thing to remember is that Mr. Shakar testified at the hearing that he never used any USB flash drive, not that he couldn't remember how many flash drives or where they were or when he connected them. He never used any of them, and actually only two weeks after being found in contempt of court on that very issue, he turned around and said, yes, I do have eight USB thumb drives, which is exactly what Mr. Rothman testified to, and, in fact, I did connect those to Teledyne's laptop. Do you make any argument that the appeal in the contempt order is premature? I mean, it's a little odd, isn't it, to have a contempt order based on a preliminary injunction when the preliminary injunction may disappear or will disappear? Well, I guess there's a couple of things. The preliminary injunction at this point, I don't see how it can disappear where he hasn't complied with it. If he had complied with it, I would agree that, you know— Well, no, a preliminary injunction disappears when the case is over. Correct. It no longer has any force. Unless there's a permanent injunction based on the preliminary. And we are seeking a permanent injunction in this case, yes. So let me get the timing of this right. He didn't file a notice of appeal within 28 days, under 59E. He filed this motion to vacate April 27, 2015, which challenged the issuance of the preliminary injunction. And the time for the preliminary injunction ran from March 10, 2015 to June 24, 2015. So, I mean, how is this even timely? Well, the preliminary injunction didn't have an end date on it. It's still in operation at this point. March 10th was the date that the preliminary injunction was entered. Is there a date assigned for hearing for the permanent injunction? No, there has not been, Your Honor. Is it contemplated that such a date will be sought? At this point, it isn't. But it may be. There is no date for a permanent injunction hearing. Preliminary injunction is an operation and nobody cares that it's not being said as a permanent injunction? Well, we do care that it's not being said as a permanent injunction, but we've been focused on the idea of getting the terms of the preliminary injunction enforced. You know, there's no such thing as a permanent preliminary injunction. There's either a permanent injunction or a preliminary injunction. You have a preliminary injunction. Correct. You should be seeking a full-time injunction. And we are. Are you? We are, Your Honor. And you have not sought a date for hearing on that issue? We have not. Are you concerned that if the contempt sanctions are not enforced, this will impede the rest of the litigation, the district court? Yes, we are, Your Honor. And the reason is because, again, this case is at heart. It's about the taking of confidential information of Teledyne's trade secrets, and we don't have the ability to really prove that case unless we get back these items. Right. I see I'm out of time. I have a lot more to say. Okay. Well, thank you. We ask that you affirm that judgment. Well, thank you, Ms. Gruenmeier. So, Mr. Roberts, we'll give you your time, and we'll give you a minute. Thanks, Judge. I would say that, besides the injunction, there are a number of counterclaims pending. Mr. Shakar, well, Mr. Shakar, I just wanted the court to know, Mr. Shakar was a whistleblower after he brought this incident to light. Ten days later, he's fired. And then we would take this as preemptive. I would say to address the court's concerns about jurisdiction, I think the Hartigan case is on point, and we looked long and hard on this as to whether or not it was appropriate to appeal now or later. And that Hartigan case, Hartigan I, Hartigan II, it's in our briefs. It's an older case. But in that case, they filed a case, injunction was entered, the individual was pro se, as Mr. Shakar was at the time. An attorney came in six months later, filed a motion to vacate it. So that's well past the 28 days you were talking about, Judge Williams. And the court said, hey, listen, look at 1292. It says, it specifically says, any appeal from an order denying modification dissolving vacating an injunction. And therefore, the court basically said, hey, it's not really an issue. I see my time's up. Thank you very much for your time, Your Honor. Thank you.